**No. 51700.**—Protest 109848–K of Washington State Liquor Control Board (Seattle).

EKWALL, Judge: This action arises by reason of the refusal of the collector of customs at Seattle to grant an allowance in duties for loss of whisky occasioned

by breakage or other injury while in transit from Scotland from three hogsheads numbered 12, 46, and 49, out of a shipment of 50 hogsheads of Scotch whisky. Plaintiff claims allowance under paragraph 813, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

At the trial it was established that the merchandise entered the United States at the port of Port Huron and upon an immediate transportation entry was transshipped by rail in bond to Seattle. The immediate transportation entry bears a notation of the customs inspector that the shipment was not checked at Port Huron. The inspector's report of the discharge of the shipment at the port of Seattle notes that hogsheads 7, 46, and 49 are light weight. The appraiser made the same report. The gauger's return, dated January 26, 1943, shows that hogshead number 7 was "Damaged Leaker," estimated capacity 67.5 gallons and contained 1.68 proof gallons; that hogshead number 12 had a capacity of 67.5 wine gallons and contained 58.62 wine gallons, or 66.82 proof gallons; that hogshead number 46 had a capacity of 64.50 wine gallons and contained 18.90 proof gallons; and that hogshead number 49 had a capacity of 69.10 wine gallons and contained 21.43 proof gallons.

The foreman of the Olympic warehouse in Seattle testified that he observed the hogsheads in the shipment in question as they were taken from the railway car; that hogsheads numbered 12, 46, and 49 were received in bad order, one being tipped over in the car, and the staves of the hogsheads were sprung around the bungs, specifically, in number 12, a stave was sprung; in number 46, the staves around the bung were sprung; and number 49, the one that was tipped over, had been recaulked around the top, but so poorly that the liquor would run out when it was tipped; that all three of the hogsheads showed signs of having leaked, and had to be specially handled in unloading and in storing.

An affidavit filed with the collector within 15 days after the "delivery" of the merchandise, as that term was defined in the case of *Schenley Import Corp.* v. *United States*, 4 Cust. Ct. 154, C. D. 310, enumerates the number of gallons of whisky lost from each of the hogsheads numbered 7, 12, 46, and 49, substantiating the report of the gauger, pointing out that the loss is more than 10 percent of the wine gallonage of each of the hogsheads in their exported condition, and requesting that an allowance be made for such loss in the liquidation of the duties. No claim is made as to hogshead 7 and it appears that the collector made allowance for loss as to that hogshead.

The evidence fully establishes that hogsheads numbered 12, 46, and 49 were broken or otherwise injured in transit from a foreign port to their port of destination at Seattle, and, as a result thereof, a part of the contents of each container amounting to 10 per centum or more of the total value of the contents thereof, in its condition as exported, had been lost.

The collector of customs in his letter of transmittal stated that he affirmed the correctness of his liquidation on the basis of paragraph 813, Tariff Act of 1930 and section 15.9 (d), Customs Regulations of 1943.

Section 15.9 (d) provided as follows:

(d) When merchandise is forwarded under an immediate transportation entry after inspection at the port of arrival, the report of the discharging inspector at that port is the gauger's return within the meaning of paragraph 813 of the tariff act. The date of delivery of the shipment shall be ascertained at the port of destination in accordance with the first sentence of paragraph (a) of this section [(a) Delivery shall be construed to be effected at the time when merchandise is actually delivered to the storekeeper in charge of a bonded warehouse or by the carrier or on its order directly to the importer. * * *] *No allowance can be made for breakage, leakage, or damage not found on inspection at the port of arrival.* Transfer of merchandise from the incoming vessel to the bonded carrier constitutes an inspection within the meaning of this regulation. [Italics not quoted.]

- Paragraph 813, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides as follows:

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within fifteen days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

Section 15.9 (d), supra, purports to interpret paragraph 813, supra, as referring to the report of the discharging inspector at the port of arrival in the United States of the merchandise as the gauger's return of breakage or damage. Were such report to be taken as the report referred to in the law, any refunds or allowances in duties for losses caused by breakage, leakage, or damage would thereby be limited to such losses as occurred prior to the arrival of the carrier at the first port of entry in the United States rather than at the port of destination.

In United States v. Somerset Importers, Ltd., 33 C. C. P. A. 138, C. A. D. 328, certain whisky was imported from Scotland and destined for San Francisco, which was landed at New York, transshipped by steamer to Los Angeles, and from there transshipped by steamer to San Francisco. Breakage and consequent loss of liquor occurred after the merchandise had landed at New York and while being transported under an immediate transportation entry to the port of destination. The collector at the port of San Francisco refused to make any allowance for loss by breakage or to accept a certificate from the importer verifying the breakage discovered at the time the liquor entered warehouse at the port of destination. Our appellate court stated that "there is no plausible reason to believe that it [Congress] intended to treat importers at ports of final destination where landings had previously been made elsewhere in any way different in respects with which we are here concerned than importers who were privileged to have delivery of their goods at the first port of landing." The court found nothing in the entire history of Congress' treatment in respect to immediate transportation entries of liquor that would indicate that it did not intend, by the provisions of paragraph 813, to grant the remedy which the importer sought.

The report of the gauger establishes that 10 percent or more of the total value of the contents of the hogsheads in question had been lost through leakage and this report was fully substantiated by the testimony of the storekeeper at the warehouse who was present at the time of the unloading of the hogsheads from the railway car.

Judgment will therefore be entered in favor of the plaintiff following the decision of our appellate court in the Somerset case, supra, directing the collector to reliquidate the entry and make refund of all duties taken upon the quantities of liquor which had been lost through damage to hogsheads numbered 12, 46, and 49, as reported by the United States gauger.